United States District Court
Southern District of Texas
**ENTERED**
January 25, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIEWIT OFFSHORE SERVICES, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:22-cv-03716 |
| U.S. DEPARTMENT OF LABOR, *et al.*, | § § § | |
| *Defendants*. | § § § § § § § | |

## ORDER ON PRELIMINARY INJUNCTION

Pending before the Court is the Plaintiff Kiewit Offshore Services, Ltd.'s ("Plaintiff" or "Kiewit") Motion for Preliminary Injunction (Doc. No. 4-2) against Defendants U.S. Department of Labor ("DOL" or "Labor Department"); Martin J. Walsh ("Walsh"), Secretary of the U.S. Department of Labor; the Employment and Training Administration ("ETA"); and Brent Parton ("Parton"), Principal Deputy Assistant Secretary of Employment and Training Administration (collectively, "Defendants"). Defendants responded in opposition (Doc. No. 19) and Plaintiff replied (Doc. No. 21). Having considered Plaintiff's Motion, the supporting declarations and exhibits, and other evidence and argument presented to the Court, the Court hereby **DENIES** Plaintiff's Motion for Preliminary Injunction.

## I. Background

This dispute centers upon whether the DOL's denial of Plaintiff's request for labor certifications in the H-2B non-immigrant visa process violates the Administrative Procedure Act ("APA").

Plaintiff is one of the largest construction and engineering firms in North America and the largest provider of integration services on floating platforms for the oil and gas industry. (Doc. No. 4-2 at 2, 4). Plaintiff employs more than a thousand United States workers in various trades such as pipe fitters, pipe welders, structural fitters, and structural welders. (*Id.* at 4).

In 2021, Plaintiff was approached by New Fortress Energy Inc. ("NFE") to build liquid natural gas ("LNG") production facilities that could result in faster delivery of LNG to the market. (*Id.*). This initial project was awarded to Plaintiff in July 2021 with a two-year time frame for delivery ("Project 1"). In this project, Plaintiff was contracted to retrofit existing offshore oil rigs to work as LNG facilities. (*Id.*). In February 2022, Russia invaded Ukraine, which impacted the delivery of LNG internationally. (*Id.*). In light of the projected increase in demand for LNG, NFE requested that Plaintiff take on two additional projects designed to enable more LNG production domestically. ("Project 2" and "Project 3"). These projects entailed similar work on two additional facilities similar to Project 1. (*Id.*). Projects 2 and 3 were scheduled to be completed in April 2023. (*Id.*).

According to Plaintiff, there is "substantial overlap" between the three projects. (*Id.* at 5). Projects 1 and 2 will overlap for eight months, from November 2022 to June 2023. (*Id.*). For six of these months, from January 2023 to June 2023, all three projects will overlap. (*Id.*). Since there is overlap between Projects 1, 2, and 3 (collectively, the "Projects"), Plaintiff contends that despite

its best efforts, it could not fill the demand for labor on these projects with workers in the United States. (*Id.*).

To address this gap, Plaintiff applied for a temporary labor certification to secure foreign labor through the H-2B visa program. That program is administered in part by the DOL, as well as the Department of Homeland Security ("DHS") and United States Citizenship and Immigration Services ("USCIS"). (*Id.* at 6). To begin the H-2B process, an employer must first secure a temporary labor certification from the DOL by submitting Form ETA-9142B. (*Id.* at 7). This form requires employers to show that it has tried, but failed, to fill positions with workers from the United States and that this country's workers will not be adversely affected by filling the positions with H-2B workers. (*Id.*). The present case centers around this first step in the H-2B process. Second, once DOL certifies the employer's request for temporary employment certification, the employer must file Form I-129, Petition for a Nonimmigrant Worker, with USCIS, which has the ultimate authority to determine eligibility for the visa under applicable regulations. (*Id.*). Third, following approval from USCIS, any potential worker seeking an H-2B outside the United States must secure a visa from the Department of State ("DOS"). (*Id.*). Finally, once a foreign worker secures a visa from DOS, the worker must be admitted to the United States by USCIS under H-2B status to begin work. (*Id.*).

As part of the initial steps of securing temporary foreign labor through the H-2B visa program, Plaintiff filed four applications with supporting evidence and documentation with the DOL seeking: (1) 150 structural fitters, (2) 50 pipe welders, (3) 125 structural welders, and (4) 125 pipe fitters. (*Id.* at 10). Once filed with the DOL, these applications were initially reviewed by a certifying officer ("CO"). After reviewing Plaintiff's applications, the CO sent Plaintiff a Notice of Deficiency for each application, that identified perceived weaknesses in Plaintiff's applications.

3

These notices identified various instances where Plaintiff failed to establish that the jobs it intended to fill with foreign workers were temporary and the basis for the number of workers it was requesting. (*Id.* at 11). Plaintiff was given the opportunity to supplement its initial applications and responded by providing additional evidence and explanations based on the noted deficiencies. (*Id.*).

After considering the additional evidence, the CO then issued four Final Determinations that denied each of Plaintiff's applications. Each concluded that Plaintiff failed to show that its need was temporary in nature. (*Id.*). Plaintiff appealed all four denials to DOL's internal appellate review body, the Board of Alien Labor Certification Appeals ("BALCA"). BALCA appeals are adjudicated by the Office of Administrative Law Judges. A BALCA appeal is heard by an administrative law judge ("ALJ") who considers whether the CO's Final Determinations were arbitrary and capricious.[1] On appeal, an ALJ affirmed the CO's decisions denying Plaintiff's applications and found the CO's determinations "reasonable" under the arbitrary and capricious standard. (*Id.*).

Plaintiff now seeks a preliminary injunction ordering DOL to grant its requested H-2B labor certifications. (Doc. No. 4-2 at 30). Specifically, it argues that the DOL acted arbitrarily and capriciously in violation of the APA by (1) applying an incorrect, "but-for" standard when considering Plaintiff's request and (2) ignoring or misinterpreting evidence Plaintiff presented

---

[1] When conducting an administrative review of a CO's decision in an H-2B appeal, BALCA "must review the CO's determination only on the basis of the Appeal File, the request for review, and any legal briefs submitted" and must either affirm the CO's determination, reverse or modify the CO's determination, or remand to the CO for further action. 20 C.F.R. § 655.51(e); (Doc. No. 1-2 at 12-13). While the relevant regulations do not define a standard of review to be applied in administrative review, BALCA has generally adopted the arbitrary and capricious standard when reviewing the decision of a CO. (Doc. No. 1-2 at 12-13). To overcome the CO's denial, the ALJ must find that each of the CO's findings and conclusions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. (*Id.* at 13). If the ALJ finds any of the CO's findings and conclusions reasonable, the ALJ affirms the decision. (*Id.*).

4

about the temporary and peakload nature of its labor needs. (*Id.* at 3). Defendants responded in opposition (Doc. No. 19) and Plaintiff replied (Doc. No. 21).

## II. Legal Standard

A preliminary injunction is an extraordinary remedy that should only be granted if the movant has clearly carried the burden of persuasion on all four factors. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003). The movant need not prove its entire case. *Lakedreams v. Taylor*, 832 F.2d 1103, 1109 (5th Cir. 1991). To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest. *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018).

## III. Analysis

### A. Likelihood of Success on the Merits

Plaintiff argues that it is likely to succeed on the merits because DOL's denial of its applications is arbitrary and capricious in violation of the APA. (Doc. No. 4-2). Specifically, Plaintiff claims that DOL (1) applied an incorrect but-for standard in their determination and (2) misinterpreted and failed to consider the evidence it presented concerning its temporary labor force needs. (*Id.*). In response, the DOL contends it applied the correct standard of review in both the Final Determinations and the BALCA opinion and rationally considered the totality of the evidence submitted when it denied Plaintiff's applications. (*See* Doc. No. 19).

5

### 1. Whether DOL Applied the Correct Standard of Review

Plaintiff first argues that the DOL acted arbitrarily and capriciously by applying a "but-for" cause standard without authority or precedent.[2] (Doc. No. 4-2 at 15). Specifically, Plaintiff focuses on a sentence from the BALCA opinion that states: "[a]lthough the war in Ukraine is causing a higher demand of LNG, Employer has not shown that **but for the war**, it would not have a need for supplemental workers." (Doc. No. 1-2 at 15) (emphasis added). Based on this single sentence, Plaintiff contends that DOL applied the incorrect standard and erroneously required that they show that the Russia-Ukraine war was a "but-for" cause of their peakload labor need. (Doc. No. 4-2 at 14). Plaintiff contends that the relevant regulations—8 C.F.R. § 214.2(h)(6)(ii)(B) and 20 C.F.R. §§ 655.6—only require that an employer show that a peakload need exists, not why the peakload need is occurring. (*Id.* at 15).

In response, Defendants contend DOL did not apply an improper "but-for" standard. Defendants point to the BALCA opinion, where the ALJ concluded that Plaintiff failed to establish its needs were temporary in nature as required by 20 C.F.R. § 655.6, which outlines that employers seeking certification must establish temporary need. 20 C.F.R. § 655.6(a)-(c); (Doc. No. 1-2 at 13). That regulation specifies that an employer seeking certification for H-2B visas must establish its temporary need as a one time occurrence, seasonal, peakload, or intermittent. 20 C.F.R. §

---

[2] Separately, Plaintiff also argues that DOL "impliedly applied" a "bright line limitation" that the length of a peakload need period must be nine months or less. (Doc. No. 4-2 at 19). Despite Plaintiff's insistence that this is a "tortured area of law," Defendants contend that Plaintiff misconstrued DOL's position. This Court agrees. First, nowhere in either the Final Determinations or BALCA opinion is a nine month, bright line limitation applied or "impliedly applied," as Plaintiff argues. (*See* Doc. No. 1-2). Plaintiff is unable to cite to any instance of this limitation being applied. Second, Plaintiff attested under penalty of perjury that its period of need was nine months. (Doc. No. 19 at 20). DOL, based on the totality of the evidence, determined that Plaintiff's need appeared to be ongoing and would last beyond the nine months it purported to have a peakload need. As Defendants stated in their brief, "[t]he applications were not denied simply because Plaintiff's need appeared to be beyond nine months" but rather because Plaintiff failed to establish its need was only within those nine months. (*Id.*). Furthermore, while length of time may have been a factor DOL considered in its determinations, it was no way dispositive. The totality of the evidence and discussion show that Plaintiff failed to meet its burden to show a short term need. There is thus no reason for the Court to consider further argument on this issue.

655.6(b). Defendants further contend that DOL denied Plaintiff's applications after evaluating its evidence and concluding—based on 20 C.F.R. § 655.6—that it failed to establish a peakload need, justify its requested dates of need, and demonstrate the temporary nature of the need. (*Id.*). Moreover, since Plaintiff, itself, explained that the war in Ukraine was a motivation reason for the company's peakload need, Defendants contend the ALJ included the "but-for" sentence because Plaintiff had failed to explain how this need driven by the war would "end in the near, definable future" if Plaintiff also anticipates it may have future "unexpected" and additional projects. (Doc. Nos. 4-2 at 11). Thus, Defendants conclude that the DOL reasonably found that the evidence Plaintiff submitted regarding the war in Ukraine showed a continuous, rather than temporary, need to fill ongoing contracts. (Doc. No. 1-2 at 14).

When the DOL reviews H-2B registrations, the central question is whether the employer has shown its need for additional workers is temporary. DHS regulations provide an operative definition of "temporary" work for the purposes of H-2B eligibility. Although DHS does not provide an explicit definition of "temporary" employment, it notes that employers must show that its needs are for "a limited period of time," that they will end in the "near, definable future," and that "[g]enerally, the period of time will be limited to one year or less." *See* 8 C.F.R. § 214.2(h)(6)(ii)(B).

An employer seeking certification has the burden of showing its need for workers is temporary and that the request is a one-time occurrence, seasonal, peakload, or intermittent need. 20 C.F.R. § 655.6(a). Plaintiff sought to have its applications approved under the category of peakload. To establish a peakload need, an employer must demonstrate: (1) the employer regularly employs permanent workers to perform the services of labor at the place of employment; (2) the employer needs to supplement its permanent staff at the place of employment on a temporary basis

due to a short-term demand; and (3) the temporary additions will not become a permanent part of the employer's operation. 8 C.F.R. § 214.2(h)(6)(ii)(B)(3). The CO rejected Plaintiff's applications —and the ALJ affirmed—because Plaintiff failed to establish its job opportunity was temporary in nature as required by 20 C.F.R. § 655(a)-(b) and failed to sufficiently establish a peakload need, justify its requested dates of need, and explain how it determined the number of workers needed as required by 8 C.F.R. § 214.2(h)(6)(ii)(B)(3). (Doc. No. 1-2 at 13-14).

The Court does not find that DOL applied the incorrect standard of review. Contrary to Kiewit's argument that DOL erroneously applied a but-for standard, the Final Determinations and BALCA opinion clearly considered the evidence based on the standards set out in 20 C.F.R. §§ 655.6(a) and 8 C.F.R. § 214.2(h)(6)(ii)(B).

In both the Final Determinations and BALCA opinion, the CO and ALJ consistently weighed Plaintiff's evidence against the proper relevant regulatory standards. (Doc. No. 1-2 at 14). For example, the BALCA opinion opens with a lengthy summary of the CO's findings based on the relevant regulations. (*Id.* at 2-13). The opinion then proceeds to discuss the basis of DOL's ultimate decision, which was that Plaintiff failed to establish a temporary, peakload need in accordance with 20 C.F.R. § 655.6(a) and 8 C.F.R. § 214.2(h)(6)(ii)(B), the very regulations that Plaintiff contends DOL deviated from. (*Id.*).

In addition to discussing the relevant regulations broadly as the basis of its decision, the BALCA opinion also considers whether Plaintiff's evidence meets the burdens in both 20 C.F.R. § 655.6(a) and 8 C.F.R. § 214.2(h)(6)(ii)(B) separately. For instance, in holding that Plaintiff failed to establish a need that was truly temporary in accordance with 20 C.F.R. § 655.6(a), the ALJ determined that Plaintiff's evidence, including its charts, a topic addressed below, illustrate a continuous need, rather than a temporary one. (*Id.* at 16-17). Based on evidence, the ALJ then

concluded that such a continuous need did not satisfy the temporariness requirement in 20 C.F.R. § 655.6(a). (*Id.*). Similarly, in accordance with the peakload need test set out in 8 C.F.R. § 214.2(h)(6)(ii)(B), the ALJ acknowledged that there was no dispute that Plaintiff satisfied the first element of the peakload need test since its extensive payroll records showed that it regularly employs permanent structural fitters, structural welders, pipe fitters, and pipe welders. (*Id.*). The central question on appeal was thus "whether [Plaintiff] has established that its needs temporarily supplement its existing staff due to a short-term demand, and that the supplemental staff will not become a permanent part of its operations," which is the second prong of 8 C.F.R. § 214.2(h)(6)(ii)(B). (*Id.*). The ALJ then analyzed the defects identified by the CO for each position and how the evidence failed to establish a peakload need and that the job opportunities were temporary in accordance with 8 C.F.R. § 214.2(h)(6)(ii)(B) and 20 C.F.R. § 655.6(a). (*Id.* at 5, 15, 17).

By fixating on the sentence mentioning the Ukrainian war and allegedly applying a "but-for" standard, Plaintiff mistakenly has focused on the forest while forsaking the need to focus on the trees. Nowhere in the BALCA opinion does DOL appear to base its decision using a "but-for" standard. The Court acknowledges the phrasing of the sentence is less than desired and that this sentence, taken on its own, has the potential to suggest DOL applied the incorrect standard in its analysis. Nevertheless, the inclusion and wording of that sentence alone was not dispositive nor critical to DOL's final determination and analysis. Outside of this sentence, the remainder of the BALCA opinion demonstrates that it weighed Plaintiff's evidence against the standards set by the relevant regulations. It did not use a "but-for" standard. The DOL appears to consistently consider the evidence as proving or failing to prove a peakload need or establishing or failing to establish that Plaintiff's job opportunities are temporary in nature. The BALCA decision reiterates the CO's

findings that Plaintiff failed, based on the totality of the evidence, to establish that its needs were temporary was supported by the facts. Thus, despite the inclusion of this sentence, the DOL clearly came to its conclusion and denied Plaintiff's applications on the basis of the relevant regulations. Thus, the Court finds that DOL did not apply an improper "but-for" standard and adhered to the relevant regulations.

2. Whether Defendants Misinterpreted Plaintiff's Evidence

Plaintiff also contends that Defendants erroneously misinterpreted and disregarded data it provided to support its requests for certification, which was arbitrary and capricious. (Doc. No. 4-2 at 17). In its applications, responses to the Notices of Deficiency, and requests for administrative review, Plaintiff attached a significant amount of supporting evidence. Plaintiff, however, specifically takes issue with how DOL considered the: (1) evidence surrounding the nature and operations of Plaintiff's business; (2) charts for each employee position that show Plaintiff's projected labor needs compared with its average needs during non-peakload periods; and (3) payroll records to establish the permanency of currently employed workers in the positions requested. In response, Defendants argue that DOL considered the totality of the evidence and provided a reasoned and rational explanation for how Plaintiff fell short of meeting its burden. (Doc. No. 19 at 20).

The petitioning employer has the burden to provide sufficient evidence and an explanation of its business operations and need to demonstrate eligibility for the immigration benefit it seeks. 8 U.S.C. § 1361. When analyzing whether Defendants improperly misinterpreted or disregarded evidence arbitrarily and capriciously in violation of the APA, this Court may only consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *See City of Shoreacres v. Waterworth*, 332 F.Supp.2d 992, 1004

(S.D. Tex. 2004), *aff'd*, 420 F.3d 440 (5th Cir. 2005). This Court is not permitted to reweigh the evidence. *Id.*

### a. Plaintiff's Evidence About the Nature and Operations of its Business

First, Plaintiff contends that DOL improperly considered its evidence about the nature and operations of the business. (Doc. No. 4-2 at 21). Specifically, it argues that DOL's analysis was "replete with errors," "focused on irrelevant evidence," and that DOL conducted an "analysis that ignored substantial evidence in the record as a whole." (*Id.*). Based on the administrative record, the CO requested Plaintiff to provide background information about Plaintiff's business in one of its Notices of Deficiency so that it could explain the change in dates of need. (Doc. No. 1-2 at 6). Plaintiff complied by submitting a background summary document with information about its employee programs and various company initiatives. (Doc. No. 4-2 at 21). Once submitted, the CO found that that the evidence submitted by Plaintiff "appeared to read like an employer manual" and provided an "at a glance reference to [Plaintiff]'s plans and procedures…but does not demonstrate a temporary need." (Doc. No. 1-2 at 5).

The Court does not find this conclusion to be a clear error of judgment. As an initial matter, it is Plaintiff's burden, as the petitioning employer, to provide sufficient evidence, an explanation of its business operations, and how this evidence and explanation relate to its temporary need. In the CO's Notices of Deficiency, a disclaimer reads, "Note: If the submitted document(s) and its relationship to the employer's need is not clear to a lay person, then the employer must submit an explanation of exactly how the document(s) support its requested dates of need." (*See* Doc. No. 30-7 at 49). Here, although Plaintiff responded to the CO's request, it failed to explain why the evidence was relevant. In its briefs, DOL also points out that "it is unreasonable to place that burden on the CO, who lacks technical expertise in Plaintiff's specific business operations." (Doc.

11

No. 19 at 21). This Court agrees. Defendants properly considered Plaintiff's evidence—it simply came to a conclusion that Plaintiff did not prefer, at least in part, because of Plaintiff's own lack of a cogent explanation. This does not constitute clear error.

      b. Plaintiff's Charts In Support of Its Claim of Temporary Need and Duration of Need

Plaintiff claims that to demonstrate its peakload need, Plaintiff provided a series of charts showing its needs for each type of worker encompassing a period of 18 months from July 2022 to December 2023, with its peak need spanning nine months from October 2022 through July 2023. (Doc. Nos. 30-8 at 288 (Structural Fitter Chart); 30-13 at 27 (Pipe Welder Chart); 30-22 at 176 (Structural Welder Chart); 30-40 at 39 (Pipe Fitter Chart). Each chart appears to demonstrate how many workers Plaintiff predicted needing compared to the average number of workers employed. (*Id.*). In the Final Determinations, the CO found that three out of four charts Plaintiff provided—specifically for structural fitters, pipe welders, and pipe fitters—showed a continuous need for supplemental workers rather than a temporary one. (*See* Doc. Nos. 30-8 at 288; 30-13 at 27; 30-40 at 39). Moreover, although the chart for structural welders addressed the temporariness requirement provided in the regulations on its own, the CO found that Plaintiff failed to explain why its period of need and project start dates did not align. (Doc. No. 1-2 at 17). Without a proper explanation for this discrepancy, the CO concluded that Plaintiff's need for structural welders was also ongoing, rather than short term, even though the chart appeared to support the temporariness of the application. (*Id.*).

On appeal, each chart was evaluated individually, beginning with the charts concerning structural fitters, pipe welders, and pipe fitters. The ALJ found that the structural fitters evidence demonstrated a need for more structural fitters than its usual average staff in 17 out of 18 months depicted. (*Id.* at 16). The pipe welder and pipe fitter charts demonstrated a similar pattern, with a

12

need for 17 out of 18 months and 18 out of 18 months, respectively. (*Id.*). In other words, Plaintiff appeared to need additional workers even in months that were categorized by Plaintiff as off-peak. Since Plaintiff appeared to need "more workers than it permanently staffs both before and after the alleged period of need," the ALJ concluded that Plaintiff failed to establish a temporary peakload need for structural fitters, pipe welders, and pipe fitters. (*Id.*). In other words, the ALJ affirmed the CO's findings that Plaintiff's need for these three positions was continuous, rather than temporary, as required by the relevant regulations. This Court also does not find that DOL improperly disregarded or ignored Plaintiff's evidence concerning structural fitters, pipe welders, and pipe fitters. Since DOL came to its conclusion based on the evidence—which depicted a need for additional workers for 17 months or more out of the 18 month period shown on the chart—a finding by DOL that Plaintiff's requests were for a continuous need rather than temporary one was reasoned and not in clear error.

The Court also does not find that DOL improperly evaluated evidence concerning structural welders. First, the ALJ noted that the structural welder chart differed from the other charts. Based on the structural welder chart, Plaintiff did not project needing more workers than it permanently staffs during off-peak months. (*Id.* at 17). In other words, the structural welder chart was the only one of the four that appeared, on its own, to address the temporariness requirement set out in the relevant regulations. (*Id.*).

Upon closer examination, however, the ALJ found a discrepancy between Plaintiff's period of need for structural welders and the project start dates. (*Id.* at 17). Plaintiff requested 125 structural welders beginning in October 2022. (*Id.*). Plaintiff, however, had previously represented that the alleged reason for needing additional welders was because of Projects 2 and 3, which were set to begin in November 2022, not October. (*Id.*). Despite being informed of this discrepancy in

13

its Notice of Deficiency for structural welders, Plaintiff did not directly address this discrepancy in its response. Instead, Plaintiff stated that the regulations did not require it to explain a discrepancy since nothing in the regulations prevents an employer from having multiple peakload needs as long as they meet the regulatory standards. (Doc. No. 30-21 at 124). Plaintiff further stated that its reason for the discrepancy was that it "ha[d] experienced a material and unexpected change in circumstances since the prior application was certified." (Doc. Nos. 1-2 at 6; 30-21 at 124). In effect, Plaintiff essentially added a month to its purported duration of need without explanation. Thus, the ALJ concluded that since Plaintiff's dates of need for structural welders did not align with the alleged reason for the peakload need, it was reasonable for the CO to inquire about the change in need and Plaintiff's inconsistent statements. (Doc. No. 1-2 at 17). Moreover, in the absence of an adequate explanation for the discrepancy, the ALJ concluded that Plaintiff failed to establish a peakload need for structural welders and that Plaintiff's need was ongoing, rather than short-term. (*Id.*).

Thus, the Court does also not find that DOL committed a clear error in its consideration of the evidence concerning structural fitters and Plaintiff's discrepancy in projected dates of need. In light of the discrepancy, the CO requested an explanation for the change. Plaintiff's explanation of the change did not explain the discrepancy at all. The Court thus finds that it was reasonable for the ALJ to conclude that Plaintiff failed to establish a peakload need for structural welders because its dates of need do not align with the start dates of Projects 2 and 3 (the alleged reason for the peakload need). Thus, no clear error was committed.

c. Plaintiff's Evidence of a Permanent Workforce Through Payroll Records

Finally, Plaintiff contends that DOL ignored or misinterpreted pertinent evidence when it stated that the payroll records Plaintiff provided were "not dated and could not be correlated with

14

[Plaintiff]'s peakload need." (Doc. No. 4-2 at 22; Doc. No. 1-2 at 6). Defendants' Notices of Deficiency requested Plaintiff to submit monthly invoices between June 2019 and June 2022 that identified total permanent and temporary staff, their respective hours worked, and earnings received. (Doc. No. 1-2 at 6). According to Plaintiff, these payroll records were presented to verify that Plaintiff regularly and historically employed workers in each of the requested positions. Plaintiff further argues that Defendants acted erroneously because the APA requires that an agency consider evidence as a whole fairly and "without playing "gotcha" games to cast aside evidence without reasoned explanation." (Doc. No. 4-2 at 22).

Upon review of Plaintiff's submitted payroll records, the records are indeed clearly dated and labeled in columns titled "Pay Period Begin Date" and "Pay Period End date."[3] (*See* Doc. No. 30-12 at 56). This Court, however, does not find that DOL, after evaluating the evidence as a whole, cast aside or ignored Plaintiff's payroll evidence without a reasoned explanation. Although the CO may have overlooked the inclusion of these dates, the ALJ rectified that oversight in the BALCA opinion. (Doc. No. 1-2 at 14). In the BALCA opinion, the ALJ states, "[Plaintiff]'s copious payroll documentation shows that it regularly employs permanent Structural Fitters, Structural Welders, Pipe Fitters, and Pipe Welders"—which shows there was no dispute as to whether Plaintiff permanently employed workers in these positions. (*Id.*). In fact, nowhere in the BALCA opinion does the ALJ ignore the payroll evidence or opine that the records lack dates as the basis for its denial of Plaintiff's applications. Plaintiff's applications were not denied because DOL felt Plaintiff did not demonstrate that it permanently employed workers in the areas that it sought the visas or because the CO overlooked dates on payroll records. They were denied because

---

[3] The Court notes that some of the payroll records, as filed, appear to be blurry and illegible. (*See* Doc. Nos. 30-3; 30-4; 30-5). It is unclear to this Court and based on the administrative record if the CO and BALCA received the same quality of copies from Plaintiff or if the documents became illegible after they were filed on ECF.

15

Plaintiff failed to establish short term demand or otherwise demonstrate that its need to supplement existing staff was due to short term demand. Given that the ALJ rectified this issue on appeal, the Court finds that Defendants did not commit a clear error when evaluating Plaintiff's payroll records.

Based on the administrative record and a review of Plaintiff's evidence, the Court does not find that Defendants erroneously misinterpreted evidence or committed a clear error in its analysis of the evidence. It is clear from the BALCA opinion that Defendants considered all of the evidence Plaintiff submitted when it concluded Plaintiff failed to meet its burden of proof. The ALJ extensively examined and discussed the CO's consideration of Plaintiff's charts, articles on the current political climate, information about current projects, business history and activities, and payroll summaries, among other pieces of evidence, but still came to the conclusion that Plaintiff's "explanation and documentation of its temporary need did not overcome its deficiency." (Doc. No. 1-2 at 15-17). Since Defendants' decision was based on the consideration of all of the evidence Plaintiff submitted and this Court does not find that there was a clear error of judgment, the Court does not find that Defendants improperly disregarded or misinterpreted evidence.

3. Whether DOL Acted Arbitrarily & Capriciously in Violation of the APA

An agency's action is held to be arbitrary and capricious in violation of the APA when it (1) relies on factors Congress did not intend for it to consider, (2) fails to analyze an important aspect of the problem or offers an explanation contrary to the evidence before it, or (3) offers an explanation so implausible it cannot be ascribed to a difference in view or a product of agency expertise. *Luminant Generation Co. LLC v. U.S. E.P.A.*, 714 F.3d 841, 850 (5th Cir. 2013). If an agency's reasoning and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld. *Tex. Oil & Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 933 (5th

16

Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29. 34, S. Ct. 2856, 77 L.Ed.2d 443 (1983)). The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

This Court finds that Defendants did not act arbitrarily and capriciously in violation of the APA. Based on the administrative record, DOL acted reasonably and rationally in its review of Plaintiff's evidence and applied the relevant regulatory standards set out in § 214.2(h)(6)(ii)(B) and 20 C.F.R. § 655.6(a). Moreover, DOL did not commit clear errors when considering Plaintiff's evidence or fail to analyze important aspects of the problem in coming to its ultimate conclusion to deny Plaintiff's applications. The conclusions that DOL reached were rationally reasoned and did not deviate significantly from what a reasonable person would conclude after reviewing the data. Furthermore, DOL did not render an explanation so implausible it could not be ascribed to a difference in view or a product of agency expertise.

Although reasonable minds could arguably differ on the conclusions DOL rendered, Plaintiff's disagreement with Defendants' assessment of the evidence and its ultimate conclusion does not mean that Defendants' denials or consideration process was arbitrary and capricious. Thus, the Court finds that Plaintiff would be unlikely to succeed on the merits.

### B. Substantial Threat of Irreparable Injury

Plaintiff argues that further delays in receiving its temporary labor certification will cause it to suffer irreparable harm in the form of unrecoverable economic damages and potential loss of customers and goodwill. (Doc. No. 4-2 at 23). If it is unable to onboard its requested 450 workers, Plaintiff contends that a four to five month delay in the delivery of its Projects can be expected. (*Id.*). Plaintiff further contends that although irreparable harm generally does not exist where

injuries are purely economic in nature, economic losses are irreparable where a plaintiff would be precluded from recovering damages from a federal agency—like DOL—that has sovereign immunity. (*Id.*).

In response, Defendants argue that Plaintiff has failed to establish irreparable harm because its economic losses are not irreparable and its potential losses in customers and goodwill are merely speculative. (Doc. No. 19 at 23-24). Defendants contend that even if this Court were to grant Plaintiff's requested relief, there is no guarantee that Plaintiff will successfully secure the 450 H-2B visas it is requesting from USCIS and the Department of State. (*Id.*). Even if the case is remanded back to DOL and the CO grants Plaintiff's certifications, Plaintiff must then use the certifications to file Form I-129 non-immigrant visa petitions with USCIS requesting H-2B status for the workers certified by DOL. (*Id.* at 25). Moreover, Defendants point out that DHS announced that the cap for H-2B visas the first half of fiscal year 2023 has already been reached. (*Id.*).

Irreparable harm generally exists when there is no adequate remedy at law, such as monetary damages. *Janvey v. Alguire,* 647 F.3d 585. 600 (5th Cir. 2011); *see also Bond Pharmacy, Inc. v. AnazaoHealth Corp.*, 815 F.Supp.2d 966, 975 (S.D. Miss. 2011). To establish a substantial threat of irreparable injury or harm, the party moving for the preliminary injunction must clearly show a concrete injury or harm resulting from the opposing party's actions. *Texas First. Nat'l Bank v. Wu*, 347 F.Supp.2d 389, 399 (S.D. Tex. 2004). Although the Fifth Circuit has yet to speak directly as to this issue, case law from other district courts suggests that where economic losses are unrecoverable because of sovereign or governmental immunity, the harm may be irreparable. *See Harris v. Cantu*, 81 F.Supp.3d 566, 580 (S.D. Tex. 2015), *rev'd on other grounds*, *Harris v. Hahn*, 827 F.3d 359 (5th Cir. 2016); *Teladoc, Inc. v. Tex. Med. Bd.*, 112 F.Supp.3d 529, 543 (W.D. Tex. 2015); *ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F.Supp.3d 700, 736-37 (E.D. Tex. 2020).

The Court finds that Plaintiff has established that it will suffer a substantial threat of irreparable harm. Although injuries that are purely economic in nature are generally not considered irreparable, DOL's governmental immunity precludes economic recovery for Plaintiff and thus establishes the presence of irreparable harm.

### C. Whether Plaintiff's Substantial Injury Outweighs the Threatened Harm and Whether Granting the Preliminary Injunction Would Disserve the Public Interest

When the government is an opposing party in a request for preliminary injunctive relief, the final two factors of the preliminary injunction test—balancing of the harm to the opposing party and the public interest—merge. *See, e.g., Nken v. Holder*, 556 U.S. 418, 435 (2009).

The Court finds that the balance of equities and the public interest do not necessarily weigh in favor or against injunctive relief here. Although Project 1 is set to be complete sometime in the summer of 2023 and Projects 2 and 3 are set to be complete in April of 2023 and according to Plaintiff, the Projects will likely be delayed by four or five months if injunctive relief is not granted, there is no evidence that Plaintiff will lose its contracts with NFE or that the potential economic and reputational harms it claims it will suffer are concrete and immediate. Moreover, Plaintiff's projected delay suggests that even without the workers it is requesting, any harm it will experience will not necessarily preclude it from ultimately completing the Projects.

Furthermore, while the DOL may be in the best position to adjudicate these applications and is ultimately charged with ensuring that the employment of temporary, non-immigrant workers does not adversely affect the United States workforce according to the Administration, there are significant public policy arguments in favor of increased LNG and energy production domestically in light of the Ukrainian war that suggest a preliminary injunction serve the public interest. Thus, in light of these competing arguments, the Court does not find that these final factors weigh in favor or against injunctive relief.

19

## IV. Conclusion

Given that DOL did not act arbitrarily and capriciously in violation of the APA when considering and ultimately denying Plaintiff's applications, this Court finds that Plaintiff is unlikely to succeed on the merits. Although Plaintiff established that it will suffer a substantial threat of irreparable harm, the Court notes that this does not necessarily alter Plaintiff's ability to receive injunctive relief given that it is unlikely to succeed on the merits. Furthermore, given that this Court has found the final two factors to be a draw as to injunctive relief, this also does not change the fact that a failure to succeed on the merits is dispositive as to Plaintiff's ability to receive injunctive relief. Thus, in the absence of success on the merits, Plaintiff has fallen short of convincing the Court to grant its requested preliminary injunction.

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction (Doc. No. 4-2).

Signed at Houston, Texas, this 25th day of January, 2023.

Andrew S. Hanen
United States District Judge