United States District Court
Southern District of Texas

**ENTERED**

August 29, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| KIEWIT OFFSHORE SERVICES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-03716 |
| | § | |
| U.S. DEPARTMENT OF LABOR, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**ORDER**

Pending before the Court is Plaintiff Kiewit Offshore Services, Ltd.'s ("Plaintiff" or "Kiewit") Motion for Summary Judgment (Doc. No. 40-2). Defendants United States Department of Labor ("DOL" or "Labor Department"); Martin J. Walsh ("Walsh"), Secretary of the U.S. Department of Labor; the Employment and Training Administration ("ETA"); and Brent Parton ("Parton"), Principal Deputy Assistant Secretary of Employment Training Administration (collectively, "Defendants") filed a combined Cross Motion for Summary Judgment and Response in opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 42-1), Plaintiff filed a combined Response and Reply (Doc. No. 44), and Defendants also filed a Reply (Doc. No. 45). Having considered the Motions and the applicable law, the Court hereby **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendants' Cross Motion for Summary Judgment.

## I.      Background

This dispute centers upon whether the Defendants' denial of Plaintiff's request for labor certifications in the H-2B non-immigrant visa process violates the Administrative Procedure Act ("APA").

Plaintiff is one of the largest construction and engineering firms in North America and the largest provider of integration services on floating platforms for the oil and gas industry. (Doc. No. 40-2 at 7). Plaintiff employs more than a thousand United States workers in various trades such as pipe fitters, pipe welders, structural fitters, and structural welders. (*Id.*).

In 2021, Plaintiff was approached by New Fortress Energy Inc. ("NFE") to build liquid natural gas ("LNG") production facilities that could result in faster delivery of LNG to the market. (*Id.*). This initial project was awarded to Plaintiff in July 2021 with a two-year time frame for delivery ("Project 1"). In this project, Plaintiff was contracted to retrofit existing offshore oil rigs to work as LNG facilities. (*Id.*).  In February 2022, Russia invaded Ukraine, which impacted the delivery of LNG internationally. (*Id.*). In light of the projected increase in demand for LNG, NFE requested that Plaintiff take on two additional projects designed to enable more LNG production domestically. ("Project 2" and "Project 3"). These projects entailed similar work on two additional facilities similar to Project 1. (*Id.*). Projects 2 and 3 were scheduled to be completed in April 2023. (*Id.*).

According to Plaintiff, the three projects' timelines "overlap substantially." (*Id.*). According to the proposed schedules, Projects 1 and 2 would have overlapped for eight months, from November 2022 to June 2023. (*Id.*). Based on the evidence before the Court, for six of these months, from January 2023 to June 2023, all three projects were projected to overlap. (*Id.*). Since there was a projected overlap between Projects 1, 2, and 3 (collectively, the "Projects"), Plaintiff

contends that despite its best efforts, it could not fill the demand for labor on these projects with workers in the United States. (*Id.*).

To address this projected gap, Plaintiff applied for a temporary labor certification to secure foreign labor through the H-2B visa program. That program is administered in part by the DOL, and in part by the Department of Homeland Security ("DHS") and its United States Citizenship and Immigration Services ("USCIS"). (*Id.* at 9). To begin the H-2B process, an employer must first secure a temporary labor certification from the DOL by submitting Form ETA-9142B. This form requires employers to show that it has tried, but failed, to fill positions with workers from the United States and that this country's workers will not be adversely affected by filling the positions with H-2B workers. The present case centers around this first step in the H-2B process. Second, once DOL certifies the employer's request for temporary employment certification, the employer must file a Form I-129, Petition for a Nonimmigrant Worker, with USCIS, which has the ultimate authority to determine eligibility for the visa under applicable regulations. Third, following approval from USCIS, any potential worker seeking an H-2B outside the United States must secure a visa from the Department of State ("DOS"). Finally, once a foreign worker secures a visa from DOS, the worker must be admitted to the United States by USCIS under H-2B status to begin work.

As part of the initial steps of securing temporary foreign labor through the H-2B visa program, Plaintiff filed four applications with supporting evidence and documentation with the DOL seeking: (1) 150 structural fitters, (2) 50 pipe welders, (3) 125 structural welders, and (4) 125 pipe fitters. (*Id.* at 10). Once filed with the DOL, these applications were initially reviewed by a certifying officer ("CO"). After reviewing Plaintiff's applications, the CO sent Plaintiff a Notice of Deficiency for each application, that identified perceived weaknesses in Plaintiff's applications.

These notices identified various instances where Plaintiff failed to establish that the jobs it intended to fill with foreign workers were temporary and the basis for the number of workers it was requesting. (*Id.*). Plaintiff was given the opportunity to supplement its initial applications and responded by providing additional evidence and explanations based on the noted deficiencies. (*Id.* at 10-11).

After considering the additional evidence, the CO then issued four Final Determinations that denied each of Plaintiff's applications. Each concluded that Plaintiff failed to show that its need was temporary in nature. (*Id.* at 11). Plaintiff appealed all four denials to DOL's internal appellate review body, the Board of Alien Labor Certification Appeals ("BALCA"). BALCA appeals are adjudicated by the Office of Administrative Law Judges. A BALCA appeal is heard by an administrative law judge ("ALJ") who considers whether the CO's Final Determinations were arbitrary and capricious.[1] On appeal, an ALJ affirmed the CO's decisions denying Plaintiff's applications and found the CO's determinations "reasonable" under the arbitrary and capricious standard. (*Id.*).

Plaintiff filed a Motion for Preliminary Injunction requesting DOL to grant its requested H-2B labor certifications. (Doc. No. 4-2 at 30). Specifically, it argued that the Defendants acted arbitrarily and capriciously in violation of the APA by (1) applying an incorrect, "but-for" standard when considering Plaintiff's request and (2) ignoring or misinterpreting evidence Plaintiff presented about the temporary and peakload nature of its labor needs. (*Id.* at 3).

---

[1] When conducting an administrative review of a CO's decision in an H-2B appeal, BALCA "must review the CO's determination only on the basis of the Appeal File, the request for review, and any legal briefs submitted" and must either affirm the CO's determination, reverse or modify the CO's determination, or remand to the CO for further action. 20 C.F.R. § 655.51(e); (Doc. No. 1-2 at 12-13). While the relevant regulations do not define a standard of review to be applied in administrative review, BALCA has generally adopted the arbitrary and capricious standard when reviewing the decision of a CO. (Doc. No. 1-2 at 12-13). To overcome the CO's denial, the ALJ must find that each of the CO's findings and conclusions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. (*Id.* at 13). If the ALJ finds any of the CO's findings and conclusions reasonable, the ALJ affirms the decision. (*Id.*).

This Court denied Plaintiff's Motion for Preliminary Injunction, finding that although Plaintiff established the presence of irreparable harm, it was unlikely to succeed on the merits because Defendants' denials were rationally reasoned and their consideration of Plaintiff's evidence was not arbitrary and capricious. (*See* Doc. No. 41).

Plaintiff then filed this Motion for Summary Judgment, which advances many of the same arguments as its Motion for Preliminary Injunction. (*See* Doc. No. 40-2 at 6). Plaintiff argues that Defendants' denial of Plaintiff's applications was arbitrary and capricious in violation of the APA and claims that DOL (1) improperly applied the incorrect standard in their determinations and (2) misinterpreted and failed to consider the evidence before them. (*Id.* at 13). Defendants filed a combined Cross Motion for Summary Judgment and Response in opposition to Plaintiff's Motion for Summary Judgment. (Doc. No. 42-1). Defendants, like Plaintiff, counter Plaintiff's arguments with identical responses to what they argued in response to Plaintiff's Motion for Preliminary Injunction. Defendants maintain that it did not violate the APA because it applied the proper standard of review and holistically and rationally considered the totality of the evidence submitted by Plaintiff in its denials. (*See* Doc. No. 42-1). Plaintiff filed a reply in opposition to Defendants' Cross Motion for Summary Judgment and in support of their Cross Motion for Summary Judgment (Doc. No. 44) and Defendants filed a reply in support of their Motion (Doc. No. 45).

## II.    Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III.   Plaintiff's Claims

As noted previously, Plaintiff argues that Defendants' denial of Plaintiff's applications was arbitrary and capricious in violation of the APA for two primary reasons: (1) that Defendants improperly applied the incorrect standard in their determinations and (2) Defendants misinterpreted and failed to consider the evidence before them. (*See* Doc. No. 40-2). Plaintiff also appears to argue that Defendants acted in an arbitrary and capricious manner in violation of the APA in its overall consideration of its applications. (*Id.*).

An agency's action is held to be arbitrary and capricious in violation of the APA when it (1) relies on factors Congress did not intend for it to consider, (2) fails to analyze an important aspect of the problem or offers an explanation contrary to the evidence before it, or (3) offers an

6

explanation so implausible it cannot be ascribed to a difference in view or a product of agency expertise. *Luminant Generation Co. LLC v. U.S. E.P.A.*, 714 F.3d 841, 850 (5th Cir. 2013). If an agency's reasoning and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld. *Tex. Oil & Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29. 34, S. Ct. 2856, 77 L.Ed.2d 443 (1983)). The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

## IV.     Whether Defendants Applied the Correct Standard of Review

The first way Plaintiffs allege that Defendants acted in an arbitrary and capricious manner is that Defendants relied on factors Congress did not intend for it to consider when they applied the incorrect standard of review.

When the DOL reviews H-2B applications, one of the central questions is whether the employer has shown its need for additional workers is temporary. DHS regulations provide an operative definition of "temporary" work for the purposes of H-2B eligibility. Although DHS does not provide an explicit definition of "temporary" employment, it notes that employers must show that its needs are for "a limited period of time," that they will end in the "near, definable future," and that "[g]enerally, the period of time will be limited to one year or less." *See* 8 C.F.R. § 214.2(h)(6)(ii)(B).

An employer seeking certification has the burden of showing its need for workers is temporary and that the request is a one-time occurrence, seasonal, peakload, or intermittent need. 20 C.F.R. § 655.6(a). Plaintiff sought to have its applications approved under the category of peakload. To establish a peakload need, an employer must demonstrate: (1) the employer regularly

employs permanent workers to perform the services of labor at the place of employment; (2) the employer needs to supplement its permanent staff at the place of employment on a temporary basis due to a short-term demand; and (3) the temporary additions will not become a permanent part of the employer's operation. 8 C.F.R. § 214.2(h)(6)(ii)(B)(3).

A. Whether DOL Improperly Required Plaintiff to Demonstrate a Lack of an Ongoing Need

Plaintiff first argues that DOL misconstrued the temporary need regulations to require that an employer demonstrate a lack of an ongoing labor need to obtain temporary employment certifications. (Doc. No. 40-2 at 13). To support this contention, Plaintiff relies upon (1) the plain language of the temporary need regulations and broader temporary need regulations, (2) the purpose of the H-2B program, and (3) "common sense" and DOL's prior decisions.[2] (Id.).

Plaintiff first argues that the plain language of the relevant regulations "contains no language supporting an argument that an employer cannot have an ongoing need for the requested occupation." (Doc. No. 40-2 at 13).

In response, Defendants contend that Plaintiff fails to provide support for this allegation and that they properly applied the definition of "temporary services or labor" when adjudicating each application. (Id.). When Plaintiff's initial evidence indicated that its need was permanent, Defendants requested additional information asking Plaintiff to further explain its need. Plaintiff responded to Defendants' request by stating that "[a]dding two full-scale projects that will need to be started, prioritized, and finished before many of [Plaintiff]'s ongoing projects are finished has

---

[2] The Court does not see the need to address Plaintiff's attempt to use adjudications of previously submitted temporary labor certifications to imply that DOL's denials in the present case were flawed. Plaintiff's previously submitted applications to the DOL are not before this Court and therefore not in dispute in this matter. Defendants also note that "Plaintiff must establish that *each* H-2B application it files is eligible for certification." (Doc. No. 42-1 at 19). Moreover, Plaintiff fails to rebut or even address Defendants' rebuttal as to this issue in its Reply. Thus, this Court agrees with Defendants that the fact that previous applications of Plaintiff's were approved is irrelevant. The Court sees no need to address this argument further.

created a peakload need." (Doc. No. 30-7 at 50). After reviewing Plaintiff's response, Defendants concluded that the information Plaintiff provided did not demonstrate a short term need, but was rather "indicative of a long-term or otherwise permanent need." (*Id.*). Thus, Defendants maintain that contrary to Plaintiff's argument, they adhered to the plain language of the relevant regulations by finding that Plaintiff's need was permanent, rather than temporary.

Plaintiff also argues Defendants ignored that the plain text of 8 C.F.R. § 214.2(h)(6)(ii)(A) states that "[t]emporary services or labor under the H-2B classification refers to any job in which the petitioner's need for the duties to be performed by the employee(s) is temporary, whether or not the underlying can be described as permanent or temporary." (Doc. No. 40-2 at 15). Thus, Plaintiff argues that the plain text of the regulation "makes clear that it is the employer's need for H-2B labor that must be temporary and not the need for the ongoing job." (*Id.*).

In response, Defendants argue that Plaintiff cannot point to any example in the record where Defendants misapplied the standard they cite. (Doc. No. 42-1 at 17). In fact, Defendants note that "[n]owhere in any of its decisions does DOL base its denial of the applications on a finding that the underlying job is permanent in nature." (*Id.*). Defendants maintain that the BALCA decision includes an extensive discussion of Plaintiff's evidence, including an explanation that Plaintiff failed to demonstrate that its need for the laborers in the underlying jobs appeared to be indicative of a temporary need. (*Id.*). According to Defendants, nowhere in any of its decisions does DOL "base its denial of the applications on a finding that the underlying job is permanent in nature." (*Id.*). Rather, Defendants argue that based on the explanations and evidence provided by Plaintiff, they concluded that Plaintiff demonstrated that its *need* for the laborers in those underlying jobs appeared to be indicative of a permanent need. (*Id.*) (emphasis in original).

Finally, Plaintiff maintains that Defendants' interpretation of the peakload need regulation "inverts the purpose of the H-2B program." (Doc. No. 40-2 at 15). Plaintiff claims that Defendants interpreted the regulations to mean that "peakload demands can only occur in times when U.S. workers are plentiful." (*Id.*). In response, Defendants maintain that they made their determinations with the understanding that the purpose of the H-2B program is to "hire *temporary* nonimmigrants to perform nonagricultural labor." (Doc. No. 42-1 at 18) (emphasis in original). According to Defendants, their review and subsequent denial of the applications and evidence submitted by Plaintiff demonstrated that their request did not amount to a temporary, peakload need. (*Id.*). Thus, Defendants argue that their conclusion that Plaintiff's need was continuous, rather than temporary, as required by the purpose of the H-2B program, was well reasoned and not in clear error. (*Id.*).

The Court does not find that DOL improperly required Plaintiff to show that it did not have an ongoing need. As an initial matter, Plaintiff devotes a significant amount of time criticizing Defendants for allegedly failing to follow the plain text of the relevant regulations and similarly accuses Defendants of failing to adhere to the purpose of the H-2B program. Plaintiff, however, fails to identify a single instance of where Defendants failed to adhere to the plain text and purpose of the regulations outside of disagreeing with Defendants' ultimate conclusion and using that as the basis for its arguments. Further, Plaintiff misconstrues Defendants' findings and the reasons outlined in the denials of Plaintiff's applications. Defendants found that Plaintiff did not establish that its need was temporary, not that it required a finding that its need was temporary only if Plaintiff could show its need was specifically not "ongoing." In reviewing the BALCA decision, the ALJ clearly analyzed the defects identified by the CO for each position Plaintiff requested and how Plaintiff's evidence failed to establish a temporary, peakload need in accordance with the relevant regulations.

In its denials, Defendants obviously reached a conclusion contrary to the one Plaintiff would have preferred. Rendering a decision that Plaintiff disagrees with, however, is not a sound basis for finding that Defendants failed to adhere the plain text and purpose of the relevant regulations. It is also not a sound basis for finding that Defendants' analysis and decision making was arbitrary and capricious. It is clear from the record that Defendants adhered to the plain text and purpose of the H-2B program and applied the relevant regulations correctly against Plaintiff's. Defendants found, again and again, that Plaintiff's evidence failed to show that its need was truly temporary. Accordingly, the Court does not find that Defendants misconstrued the plain text or purpose of the relevant regulations or that it applied an improper standard in its denials.

B.  Whether Defendants Improperly Used a "Congressionally-Barred" Standard

Plaintiff further argues that Defendants improperly denied its applications by applying 20 C.F.R. § 655.6(b)'s nine month bright line limitation in its denials, which is "congressionally-barred." (Doc. No. 40-2 at 18).

Plaintiff contends that Defendants denied Plaintiff's applications because they improperly applied § 655.6(b)'s nine month bright line limitation that limited temporariness for a peakload need period to nine months. To support this contention, Plaintiff maintains that Defendants cited to 20 C.F.R. § 655.6(b) nine times throughout its Final Determinations and BALCA opinion. (*Id.*).

20 C.F.R. § 655.6(b) states:

> The employer's need is considered temporary if justified to the CO as one of the following: A one-time occurrence; a seasonal need; a peakload need; or an intermittent need, as defined by DHS regulations. Except where the employer's need is based on a one-time occurrence, the CO will deny a request for an *H–2B Registration* or an *Application for Temporary Employment Certification* where the employer has a need lasting more than 9 months.

20 C.F.R. § 655.6(b) (emphases in original).

The Court finds that Plaintiff has misconstrued Defendants' position. First, it should be pointed out that Plaintiff's stated peakload need was for a nine month period. Nowhere in either the Final Determinations or the BALCA opinion is a nine month, bright line limitation applied as Plaintiff argues. Plaintiff is unable to cite to any instance of this limitation being applied. In fact, in Plaintiff's Motion for Preliminary Injunction, it specifically argued that § 655.6(b) was "impliedly applied" because it could not identify an instance in the record where Defendants had actually relied upon § 655.6(b) or a nine month bright line limitation as the basis for its denials.

Plaintiff runs into the same issue here. Plaintiff itself attested under penalty of perjury that its period of need was nine months. (Doc. No. 10 at 20). Defendants, after an examination of the totality of the evidence, determined that Plaintiff failed to meet its burden to show a short term, temporary need because Plaintiff itself stated that its need was nine months, but then failed to show that its need was actually limited to those nine months. Plaintiff's application was not denied because Plaintiff's need was beyond nine months or that its stated period of need was nine months—but rather because Plaintiff failed to establish that its need was limited to and would not last beyond the nine months it attested it would be experiencing a peakload need. (*Id.*).

Thus, this Court does not find that Defendants improperly applied § 655.6(b)'s bright line limitation or that Defendants committed an abuse of discretion as Plaintiff contends.

C. Whether Defendants Improperly Used a "But-For" Test

Plaintiff also argues that Defendants improperly used an *ultra vires* "but-for" test when determining that Plaintiff did not demonstrate a temporary need. Specifically, Plaintiff relies on a sentence from the BALCA opinion that states: "[a]lthough the war in Ukraine is causing a higher demand of LNG, Employer has not shown that **but for the war**, it would not have a need for supplemental workers." (Doc. No. 30-40 at 210) (emphasis added). Relying upon this singular

sentence, Plaintiff maintains that Defendants applied an improper but-for standard and required it to show that the Russia-Ukraine war was the but-for cause of their temporary need.

The Court does not find that Defendants applied the incorrect standard of review or that it applied a but-for standard. A review of the Final Determinations and BALCA opinion demonstrates that Defendants denied Plaintiff's applications based on consideration of evidence based on standards set out in 20 C.F.R. §§ 655.6(a) and 8 C.F.R. § 214(h)(6)(ii)(B). For example, the ALJ noted in the BALCA opinion that Plaintiff's evidence illustrated a continuous need, rather than a temporary one, which did not satisfy the temporariness requirement outlined in 20 C.F.R § 655.6(a). The ALJ also noted that Plaintiff satisfied the first element of the peakload need test since it cited to extensive payroll records showing it regularly employed permanent structural fitters, structural welders, pipe fitters, and pipe welders. The ALJ ultimately found that Plaintiff had failed to correct the defects identified by the CO for each position in each Final Determination and that it failed to establish that the job opportunities were temporary, that it had a peakload need, and that its needs were temporary under the second prong of 8 C.F.R. § 214.2(h)(60(ii)(B).

Thus, the Court finds that Plaintiff not only misconstrues this sentence, but also, as this Court held in its Order denying Plaintiff's Motion for Preliminary Injunction, "Plaintiff mistakenly has focused on the forest while forsaking the need to focus on the trees." (Doc. No. 41 at 9). Further, as the Court noted in its earlier Order, the phrasing of the sentence in question is somewhat less than desired—and that the sentence, if viewed in isolation, had the potential to suggest that Defendants applied an improper but-for standard in its analysis. Nevertheless, context matters. Viewing the record as a whole, the sentence was clearly not dispositive nor critical to Defendants' analysis. Plaintiff itself explained that the war in Ukraine was a significant reason for the company's peakload need. The BALCA opinion acknowledged that Plaintiff submitted evidence

regarding the war in Ukraine, and then concluded that the evidence as a whole was insufficient to support that Plaintiff had a temporary need rather than a continuous one. It did not isolate the Ukraine war as the basis for its denials or as the sole reason for why Plaintiff failed to show a temporary need. The remainder of the BALCA opinion demonstrates that Defendants came to its ultimate conclusion because it weighed the entirety of Plaintiff's evidence against the standards set by the relevant regulations and did not use a but-for standard. The BALCA opinion emphasizes the CO's findings that Plaintiff failed, based on the totality of the evidence, to establish that its needs were temporary. Accordingly, the Court finds that Defendants did not apply an improper but-for standard and properly adhered to the relevant regulations in its analysis.

## V.     Whether Defendants Considered the Totality of the Evidence

The second way Plaintiff alleges Defendants acted in an arbitrary and capricious manner in violation of the APA is that Defendants failed to analyze an important aspect of the problem, offered an explanation contrary to the evidence before it, and offered an explanation so implausible it cannot be ascribed to a difference in view or a product of agency expertise.

Specifically, Plaintiff argues that Defendants failed to consider the totality of the evidence, ignored "straight-forward" evidence, and mischaracterized the evidence it did consider. (Doc. No. 40-2 at 19). Plaintiff also contends that Defendants improperly considered non-record evidence when it denied its structural welder application. (*Id.* at 22).

### A.   Whether Defendants Failed to Consider "Straight-Forward" Evidence

Plaintiff argues that Defendants failed to analyze an important aspect of the problem and failed to consider the totality of the evidence because it ignored "straight-forward" evidence. (*Id.* at 19).

The petitioning employer has the burden to provide sufficient evidence and an explanation of its business operations and need to demonstrate eligibility for the immigration benefit it seeks. 8 U.S.C. § 1361. When analyzing whether Defendants improperly misinterpreted or disregarded evidence arbitrarily and capriciously in violation of the APA, this Court may only consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *See City of Shoreacres v. Waterworth*, 332 F.Supp.2d 992, 1004 (S.D. Tex. 2004), *aff'd*, 420 F.3d 440 (5th Cir. 2005). This Court is not permitted to reweigh the evidence. *Id.*

To show a peakload need, Plaintiff was required to show (1) a permanent workforce at the location; (2) a need to supplement this workforce due to a short-term demand; and (3) that the H-2B workers would not become a part of this permanent workforce. 8 C.F.R. § 214(h)(6)(ii)(B)(3).

Plaintiff first contends that it met the first prong of the peakload need test when it submitted "copious payroll documentation" that established it regularly employees permanent workers in the requested positions. (*Id.* at 19). Second, Plaintiff claims that it submitted extensive evidence about the nature and operations of its business to explain why it needed to supplement its permanent staff due to short term demand. (*Id.* at 20-21). This included information about the Projects, news articles documenting growing demand for LNG in the United States, charts in support of the temporary nature of its request for all four positions, and explanations of all of its evidence. (*Id.*). Third, Plaintiff argues it submitted lists of its former H-2B workers and information about its employee programs and company initiatives to show that none of the requested workers would become a part of its permanent workforce. (*Id.* at 21). Plaintiff argues that it "explained itself at length" in both its applications and supplemental evidence and Defendants "used this against them" by claiming that the supplemental evidence "read like an employer manual." Plaintiff

15

maintains that despite meeting each element of the peakload need test and presenting a significant amount of evidence as to each element, Defendants arbitrarily and capriciously denied its applications by failing to consider the entirety of its evidence and misinterpreting the evidence it did consider. Thus, according to Plaintiff, Defendants' denials were decided in clear error because it failed to consider "straight-forward" evidence. (*Id.* at 19, 22).

In response, Defendants do not contest that Plaintiff satisfied the first element of the peakload need test when it submitted payroll records to establish that it regularly employs permanent workers in the requested positions. (*Id.* at 21-22). Defendants do contest, however, Plaintiff's arguments that it did not engage in a consideration of the totality of Plaintiff's submitted evidence. Defendants maintain that it considered all of Plaintiff's evidence. Defendants cite to portions of the BALCA opinion that discussed the CO's consideration of the charts, contracts, and representations made by Plaintiff in the record. (*Id.* at 22; *see also* Doc. No. 30-40 at 209-12). It also notes the portions of the opinion that acknowledged and considered Plaintiff's submission of its business history and activities, payroll summary, articles, statements of facts, and other supplemental evidence. (Doc. No. 40-2 at 22-23; Doc. No. 30-40 at 209-12). Even after consideration of all of this evidence, however, Defendants found that Plaintiff had failed to provide sufficient evidence and explanations required to meet its burden for a temporary need. (Doc. No. 40-2 at 23; Doc. No. 30-40 at 209-12). Defendants explained in detail in the BALCA opinion why Plaintiff's evidence fell short of establishing that its need was temporary. (Doc. No. 30-40 at 209-212). Coming to a conclusion Plaintiff did not desire, Defendants argue, is not evidence that they failed to consider all of Plaintiff's evidence.

Defendants also contest Plaintiff's characterization that they misinterpreted Plaintiff's supplemental evidence. (Doc. No. 40-2 at 22). According to Defendants, the CO requested

additional background information from Plaintiff about its business to garner clarity as to its requested dates of need for its requested positions. (*Id.*). In response, Plaintiff provided documentation through a background summary document with information about its employee programs, company initiatives, and new and existing projects. This documentation was intended to establish that its requested workers would not become a permanent part of its workforce. (Doc. No. 4-2 at 21). The CO found Plaintiff's documentation "appeared to read like an employer manual" and explained that the information only provided "an at-a-glance reference to Employer's plans and procedures, but does not demonstrate a temporary need." (Doc. No. 1-2 at 5). Defendants thus maintain that, absent further explanation from Plaintiff, their finding that the supplemental documentation Plaintiff provided demonstrated a "long-term, permanent need instead of a short-term need" was not made in clear error.

Based on the administrative record, the Court does not find that Defendants misinterpreted evidence in its analysis. It is clear from the record that Defendants considered all of the evidence Plaintiff submitted when it concluded Plaintiff failed to meet its burden of proof that its peakload need was temporary. The ALJ extensively examined and discussed the CO's consideration of Plaintiff's charts, articles on the current political climate, information about current projects, business history and activities, and payroll summaries, among other pieces of evidence, but still concluded that Plaintiff's "explanation and documentation of its temporary need did not overcome its deficiency." (Doc. No. 1-2 at 15-17; *see* Doc. No. 30-40 at 209-12). Contrary to Plaintiff's arguments, submitting a voluminous record of evidence is not a guarantee of—nor does it necessitate—an approval of its applications. Moreover, Defendants coming to a conclusion that Plaintiff does not desire does not equate to misinterpreting or ignoring evidence. Despite the

volume of evidence Plaintiff submitted, Defendants considered the record in its entirety and still found the evidence insufficient to demonstrate that Plaintiff possessed a temporary peakload need.

Furthermore, the Court does not find Defendants' description that Plaintiff's supplemental evidence "reads like an employer manual" and thus failed to demonstrate a temporary need to be a clear error of judgment. As an initial matter, it is Plaintiff's burden, as the petitioning employer, to provide sufficient evidence, an explanation of its business operations, and how this evidence and explanation relate to its temporary need. In the CO's Notices of Deficiency, a disclaimer reads, "Note: If the submitted document(s) and its relationship to the employer's need is not clear to a lay person, then the employer must submit an explanation of exactly how the document(s) support its requested dates of need." (*See* Doc. No. 30-7 at 49). Here, although Plaintiff responded to the CO's request for additional information by providing a background summary document with information about its employee programs, company initiatives, and new and existing projects, it failed to adequately explain why the evidence was relevant. As noted in Plaintiff's own briefs, Defendants pointed out that "it is unreasonable to place that burden on the CO, who lacks technical expertise in Plaintiff's specific business operations." (Doc. No. 40-2 at 21). This Court agrees. Plaintiff provided supplemental documentation that it believed demonstrated its temporary need but did not provide a thorough explanation of the evidence it submitted. Defendants considered Plaintiff's evidence and found, absent further explanation, that the evidence did not demonstrate a temporary need. Defendants simply came to a conclusion that Plaintiff did not prefer, at least in part, because of Plaintiff's own lack of a cogent explanation. This does not constitute clear error.

Plaintiff has, in effect, asked this Court to reweigh the evidence submitted to Defendants in its applications. The Court declines to do so and finds that Defendants' decision was based on a holistic consideration of the entirety of the evidence Plaintiff submitted. It also finds that

Defendants did not ignore evidence or misinterpret evidence that was before it. Accordingly, the Court does not find that Defendants committed a clear error in its denials or that it improperly misinterpreted, ignored, or disregarded Plaintiff's evidence.

## B. Whether Defendants Improperly Considered Non-Record Evidence

Plaintiff also contends that Defendants improperly considered non-record evidence in its denial of its structural welder application. (Doc. No. 40-2 at 22). According to Plaintiff, Defendants stated that Plaintiff had used inconsistent dates to identify when its peakload period would begin in its structural welder application. (*Id.*). Plaintiff claims it provided an explanation for the change in dates, which Defendants "impermissibly ignored." (*Id.* at 23). Plaintiffs further allege that Defendants then compared the discrepancy in dates to "previous requests" that were "irrelevant to the instant peakload inquiry, as they were submitted well before" the addition of Projects 2 and 3.

In response, Defendants maintain that they are permitted to consider prior applications in this case submitted by the same employer when determining whether the application demonstrates a temporary need. (Doc. No. 42-1 at 23) (citing *Wilco Guttering Co, Inc.*, 2018-TLN-00004, at 7 (Oct. 30, 2017), relying, in part, on previous applications to determine temporary need). When Defendants identified that Plaintiff's requested dates were inconsistent in its structural welder application, Defendants inquired about the change in need from Plaintiff's prior application to inform its determination on Plaintiff's request. (*Id.* at 24). In response, Plaintiff stated:

> DOL has requested evidence for why the dates of need have changed from [Employer]'s prior certification. Importantly, we note under the H-2B definitions, there is nothing to indicate that more than one instance of peakload need is prohibited so long as all of the regulatory standards are met for each request. That being said, [Employer] has experienced a material and unexpected change in circumstances since the prior application was certified.

(Doc. No. 30-40 at 200-201).

19

Defendants maintain that Plaintiff's above response to its inquiry was conclusory and did not address or resolve its concerns about establishing peakload need. (Doc. No. 42-1 at 24). Furthermore, when denying Plaintiff's structural welder application, the CO noted that Plaintiff stated that its need for these positions would begin on October 2022, which did not align with the project start date, which was November 2022. (Doc. No. 30-21 at 124). Plaintiff referred to "ramp up" activities as the explanation for this discrepancy and did not include further details. (Doc. No. 30-40 at 205). Without more, Defendants concluded that Plaintiff failed to provide an adequate explanation for the discrepancy between its period of need and project start dates. Since Plaintiff failed to rectify the issue Defendants identified when it was given an opportunity to do so, Defendants argue that it did not "impermissibly disregard" Plaintiff's explanation as Plaintiff claims it did. (Doc. No. 42-1 at 24).

The Court does not find that Defendants improperly evaluated evidence concerning structural welders. Defendants identified a discrepancy between Plaintiff's period of need for structural welders and the project start dates. (Doc. No. 30-40 at 17). Plaintiff requested 125 structural welders beginning in October 2022. (*Id.*). Plaintiff, however, had previously represented that the alleged reason for needing additional welders was because of Projects 2 and 3, which were set to begin in November 2022, not October. (*Id.*). Despite being informed of this discrepancy in its Notice of Deficiency for structural welders, Plaintiff did not directly address or resolve this discrepancy in its response. Instead, Plaintiff stated that the regulations did not require it to explain a discrepancy since nothing in the regulations prevents an employer from having multiple peakload needs as long as they meet the regulatory standards. (Doc. No. 30-21 at 124). Plaintiff further stated that its reason for the discrepancy was that it "ha[d] experienced a material and unexpected change in circumstances since the prior application was certified." (Doc. Nos. 1-2 at 6; 30-21 at

20

124). In effect, Plaintiff essentially added a month to its purported duration of need without explanation. The ALJ concluded that since Plaintiff's dates of need for structural welders did not align with the alleged reason for the peakload need, it was reasonable for the CO to inquire about the change in need and Plaintiff's inconsistent statements. (Doc. No. 1-2 at 17). Moreover, in the absence of an adequate explanation for the discrepancy, the ALJ concluded that Plaintiff failed to establish a peakload need for structural welders and that Plaintiff's need was not temporary. (*Id.*).

Thus, the Court does also not find that Defendants committed a clear error in its consideration of the evidence concerning structural welders and Plaintiff's discrepancy in projected dates of need. In light of the discrepancy, the CO requested an explanation for the change. Plaintiff's explanation of the change did not explain or resolve the discrepancy at all. In the absence of an explanation, the Court thus finds that it was reasonable for the ALJ to conclude that Plaintiff failed to establish a peakload need for structural welders because its dates of need do not align with the start dates of Projects 2 and 3 (the alleged reason for the peakload need). Thus, Defendants did not commit a clear error in denying Plaintiff's structural welder applications.

## VI. Whether Defendants' Actions Were Arbitrary & Capricious

Finally, Plaintiff appears to argue that Defendants' overall analysis and consideration of its applications was arbitrary and capricious in violation of the APA. (*See* Doc. No. 40-2).

As previously noted, an agency's action is held to be arbitrary and capricious in violation of the APA when it (1) relies on factors Congress did not intend for it to consider, (2) fails to analyze an important aspect of the problem or offers an explanation contrary to the evidence before it, or (3) offers an explanation so implausible it cannot be ascribed to a difference in view or a product of agency expertise. *Luminant Generation Co. LLC v. U.S. E.P.A.*, 714 F.3d 841, 850 (5th Cir. 2013). If an agency's reasoning and policy choices conform to minimal standards of

rationality, then its actions are reasonable and must be upheld. *Tex. Oil & Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29. 34, S. Ct. 2856, 77 L.Ed.2d 443 (1983)). The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

This Court finds that Defendants, in denying Plaintiff's applications, did not act arbitrarily and capriciously in violation of the APA. Based on the administrative record, Defendants acted reasonably and rationally in its review of Plaintiff's evidence and applied the relevant regulatory standards set out in § 214.2(h)(6)(ii)(B) and 20 C.F.R. § 655.6(a). Moreover, Defendants did not commit clear errors when considering Plaintiff's evidence or fail to analyze important aspects of the problem in coming to its ultimate conclusion to deny Plaintiff's applications. The conclusions reached were rationally reasoned and did not deviate significantly from what a reasonable person would conclude after reviewing the data. Furthermore, Defendants did not render explanations so implausible it could not be ascribed to a difference in view or a product of agency expertise.

Although reasonable minds could arguably differ on the conclusions Defendants rendered, Plaintiff's disagreement with Defendants' assessment of the evidence and its ultimate denial of its applications does not mean that Defendants' decisions or consideration process was arbitrary and capricious. Thus, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendants' Cross Motion for Summary Judgment.

### VII.    Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment

(Doc. No. 40-2) and **GRANTS** Defendants' Cross Motion for Summary Judgment (Doc. No. 42-

1). The case is hereby dismissed with prejudice.


Signed at Houston, Texas, this 25 day of August, 2023.


Andrew S. Hanen
United States District Judge

23